Justin DONDANVILLE *v.* STATE of Arkansas

CA CR 03-724                                157 S.W.3d 571

Court of Appeals of Arkansas
Division III
Opinion delivered April 7, 2004

*T. David Carruth*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

Andree Layton Roaf, Judge. Appellant Justin Dondanville entered a conditional plea of nolo contendere to possession of drug paraphernalia and was sentenced to eighteen months in a regional punishment facility. On appeal, Dondanville argues that the trial court erred in denying (1) his motion to suppress his statements given while in police custody and (2) his motion to suppress evidence seized at the time of his arrest that was subsequently

destroyed by the police. We affirm on Dondanville's first point on appeal but do not have jurisdiction to address his second point challenging the trial court's denial of his motion to suppress evidence because his argument does not fall within the purview of Ark. R. Crim. P. 24.3(b).

At the suppression hearing, Deputy Sheriff Jack Lock with the Arkansas County Sheriff's Department testified that, on June 17, 2002, he responded to information concerning a van that was stuck in a ditch. He located the vehicle, which was registered to Dondanville, and followed dolly tracks leading from the van to a residence owned by Tammy Rich. Lock stated that he approached a screened-in porch attached to the residence, where he noticed a man whom he recognized as Steven Simpson sleeping in a chair next to a large tank, which was giving off the smell of ammonia. Lock asked Simpson whose anhydrous tank it was, but he did not reply. Lock also questioned Simpson as to the whereabouts of Dondanville, and Simpson stated that he was in the house.

Lock testified that he then knocked on the door of the house and that Stacy Dondanville answered the door. He told her that he needed to talk to Justin, and they stepped outside to talk. Lock testified that he advised Dondanville of his *Miranda* rights and asked him a question about the anhydrous tank. According to Lock, Dondanville told him that he got the tank so that he could make money with it. Lock stated that he then placed Dondanville under arrest and obtained consent to search the house. He found another smaller tank, which was empty, on the porch. Lock stated that the end of the large tank was broken off, which made it hazardous, so he called the Sheriff's Department and had them bring a trailer. Other than the smell, Lock stated that what indicated the tank contained anhydrous ammonia was the bluish tint on the end of the tank valve and that this coloration is unique to anhydrous ammonia. He testified that they took the large tank to an open area and disposed of it because of its hazardous material, and that they also disposed of the smaller tank. Lock stated that he took pictures of both tanks before he disposed of them.

Lock testified that he took a written statement from Dondanville at the Sheriff's Department, after he again advised him of his *Miranda* rights. According to Lock, Dondanville signed a waiver form indicating that he agreed to give a statement. In his statement, Dondanville stated that he stole the big tank and that he was going to use it to fill the smaller tank and sell it to make money. Lock testified that it is illegal to possess anhydrous ammonia in a

container that is not properly labeled and in compliance with state regulations and that the large tank possessed by Dondanville was not in compliance. Although Lock indicated that it was not illegal to possess the small tank since it was empty, he stated that it had evidentiary value because of what Dondanville said in his statement. Dondanville testified at the hearing that there were markings on the large tank and a sticker that had the State of Arkansas on it. He stated that it was his understanding that the tank complied with the law.

Dondanville was charged with violating Ark. Code Ann. § 5-64-1301 (Supp. 2003), which provides that possession of anhydrous ammonia in a container that does not comply with the regulations of the Boiler Inspection Division of the Department of Labor for the containment of anhydrous ammonia is a Class B felony. After the trial court denied his motions to suppress his statements and the evidence of the tanks, Dondanville entered a negotiated plea of nolo contendere to possession of drug paraphernalia and a sentence of eighteen months in a regional punishment facility. His plea was also conditional, reserving his right to appeal the trial court's denial of his motions to suppress under Ark. R. Crim P. 24.3(b).

In his first point on appeal, Dondanville argues that the trial court erred in not suppressing the verbal and written statements he made to Deputy Lock. Dondanville asserts that the State did not prove that he made a voluntary statement after waiving his *Miranda* rights in each instance. Dondanville contends that the State failed to introduce evidence that he waived his rights, such as the written waiver form referred to by Lock at the suppression hearing, which Dondanville argues was not introduced into evidence.

We first note that Dondanville does not cite any authority in support of his argument on this point; thus, this court need not address his argument. *See Ward v. State*, 350 Ark. 69, 84 S.W.3d 863 (2002) (stating that arguments unsupported by authority or convincing argument will not be addressed). However, even if we were to address the merits, the trial court's denial of Dondanville's motion to suppress his statements was not clearly erroneous.

Statements arising from custodial interrogation are presumed to be involuntary, and the burden is on the State to prove that a custodial statement was given voluntarily and was knowingly and intelligently made. *Grillot v. State*, 353 Ark. 294,

107 S.W.3d 136 (2003). In determining whether a waiver of *Miranda* rights is voluntary, this court looks to see if the confession was the product of free and deliberate choice rather than intimidation, coercion, or deception. *Id.* In making this determination, we review the totality of the circumstances surrounding the waiver including the age, education, and intelligence of the accused, the lack of advice as to his constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, the use of mental or physical punishment, the statements made by the interrogating officers, and the vulnerability of the defendant. *Jordan v. State*, 356 Ark. 248, 147 S.W.3d 691 (2004). We will reverse a trial court's ruling on this issue only if it is clearly against the preponderance of the evidence. *Id.*

Here, Deputy Lock testified that he verbally advised Dondanville of his *Miranda* rights prior to his arrest and that he then asked him about the anhydrous tank. According to Lock, Dondanville then voluntarily stated that he obtained the tank so that he could make money off of it. Prior to questioning Dondanville subsequent to his arrest, Lock testified that he again advised him of his rights using a standard form, that Dondanville initialed that he understood each of these rights, and that he then signed a written waiver agreeing to give him a statement.

■ Dondanville argues that there was no proof that he waived his rights prior to making his statements and that the written waiver Lock referred to was not introduced at the hearing. While this written waiver may not have been introduced at the hearing, it is contained in the record and the State has included it in its supplemental addendum. However, a written waiver is not required to effect a valid waiver, *Rankin v. State*, 338 Ark. 723, 1 S.W.3d 14 (1999); *Bangs v. State*, 338 Ark. 515, 998 S.W.2d 738 (1999), and the failure to seek admission of the waiver form is not essential where there is no contention that the rights were not explained or understood. *Rushing v. State*, 338 Ark. 277, 992 S.W.2d 789 (1999) (citing *Cagle v. State*, 267 Ark. 1145, 594 S.W.2d 573 (1980)). Furthermore, merely by answering questions, an accused may impliedly waive his right to remain silent. *Miles v. State*, 348 Ark. 544, 75 S.W.3d 677 (2002); *Bangs v. State, supra.*

■■ As the State contends, Dondanville does not claim that he did not understand his rights, but rather argues that the State did not meet its burden of proof that he waived his rights. Given Lock's testimony that he advised Dondanville of his rights,

both verbally and in writing, prior to questioning him, and that Dondanville agreed to waive his rights and signed a written waiver agreeing to make a statement, the State met its burden of showing by a preponderance of the evidence that Dondanville's statements were voluntary. While Dondanville also argued in his motion to suppress that his statements were the product of coercion, he does not raise this argument on appeal, and thus, it is deemed to be abandoned. *Jordan v. State, supra.* The trial court's ruling denying Dondanville's motion to suppress his statements was not clearly erroneous, and we affirm on this point.

Dondanville's second point on appeal challenges the trial court's denial of his motion to suppress the physical evidence seized by the police at the time he was arrested. Dondanville argues, as he did in his motion to suppress, that the small tank was empty and did not contain anhydrous ammonia. Because it is not illegal to possess an empty tank, he asserts that evidence of this small tank was therefore irrelevant and had no evidentiary value. With respect to the large tank that allegedly contained anhydrous ammonia, Dondanville contends that there were markings or stickers on the tank containing the words "State of Arkansas," and that he believed that the tank met the requirements for storing anhydrous ammonia. Because Lock testified that he destroyed the large tank, that the substance inside it was not tested by the crime lab, and that neither tank was available for inspection or testing by the defense, Dondanville argues that the State violated its duty to preserve and turn over to the defense any exculpatory evidence. Had he had access to this evidence, Dondanville contends that he would have been acquitted of the crime with which he was charged.

■ However, as the State argues, we are unable to address Dondanville's argument on this point as it is not cognizable in an appeal pursuant to Ark. R. Crim. P. 24.3(b). As was stated in *Payne v. State*, 327 Ark. 25, 29, 937 S.W.2d 160, 162 (1997), Rule 24.3 controls conditional guilty pleas and subsequent review of the trial court's failure to suppress evidence, and it pertains "only to evidence illegally obtained — not to evidence wrongfully admitted." *See, e.g., id.* (dismissing appeal for lack of jurisdiction where appellant's argument challenging trial court's admission of prior convictions into evidence concerned admissibility of evidence not alleged to have been illegally obtained); *Scalco v. State*, 42 Ark. App. 134, 856 S.W.2d 23 (1993) (dismissing appeal where appellant

sought to "suppress" results of a breath test for failure to follow the statute, which is an issue of admissibility, not suppression as contemplated by Rule 24.3(b)). In the absence of compliance with the express terms of Rule 24.3(b), we acquire no jurisdiction to hear an appeal from a conditional plea. *Berry v. City of Fayetteville*, 354 Ark. 470, 125 S.W.3d 171 (2003). Because Dondanville's argument pertaining to the evidence of the tanks goes to its admissibility, and not to whether the tanks themselves were illegally obtained, this court does not have jurisdiction of this point on appeal. *Payne, supra.* Thus, we affirm on Dondanville's first point on appeal and decline to address his second point.

Affirmed.

NEAL and VAUGHT, JJ., agree.